Schwartz v. Marcantonatos

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand fourteen.

PRESENT: DENNIS JACOBS,
ROBERT D. SACK,
GERARD E. LYNCH,
_Circuit Judges_.

- - - - - - - - - - - - - - - - - - - -X

PAULINE SCHWARTZ,
    **Plaintiff-Appellee**,

    **-v.-**                                          13-2870

JAMES MARCANTONATOS, JONATHAN CHIN, Shield No. 240, JULIO SANTIAGO, Shield No. 23556, Individually and in Their Official Capacities, MICHAEL VOSS, Shield No. 25617, Individually and in Their Official Capacities,
    **Defendant-Appellants**,

THE CITY OF NEW YORK, JOHN DOES 1-10, Individually and in Their Official Capacities, JANE DOES 1-10, Individually and in Their Official

1

Capacities, (the name Jane Doe being fictitious as the true name are presently unknown),

**Defendants**.

- - - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANTS:**          VICTORIA SCALZO (Kristin M. Helmers and Andrew Lucas, on the brief), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York.

**FOR APPELLEE:**          GABRIEL P. HARVIS (Scott A. Korenbaum, on the brief), Harvis Wright & Fett LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Officers Marcantonatos, Chin, Santiago, and Voss appeal from the judgment of the United States District Court for the Southern District of New York (Hellerstein, J.), denying their motions for summary judgment on the ground of qualified immunity. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

For purposes of this interlocutory appeal, we must accept as true the plaintiff's version of the facts. See, e.g., Loria v. Gorman, 306 F.3d 1271, 1280 (2d Cir. 2002) ("[E]ven if the district court finds that material issues of fact exist, we may still exercise interlocutory jurisdiction if the defendant . . . contends that he is entitled to qualified immunity even under plaintiff's version of the facts." (quotation marks omitted)). On May 29, 2011, police officers in New York's Central Park precinct conducted a "lucky bag" operation as part of a program to deter unattended-property crimes. In these operations, plainclothes police leave an unattended bag or wallet in the open and wait to see if somebody picks it up. Arrest is

2

made if the finder exhibits an intent to steal it; usually this involves "separation," that is, the suspect discards the bag after removing something from the bag.

On May 29, 2011, the defendant police officers left an unattended bag near a bench in the Poets' Walk area of the park. Pauline Schwartz sat on the bench, noticed the bag, picked up the bag, and placed it in a plastic grocery bag.[1] At no point did she open the bag or look inside. There were no uniformed police officers nearby and Schwartz began to walk in the direction of the nearby Dairy Visitor Center.

Because there was no "separation," Lieutenant Marcantonatos employed a ruse to determine whether Schwartz intended to steal the bag. He approached her on a bicycle-- in an area of the park where bicycle riding is prohibited-- and asked Schwartz if she happened to pick up his wife's bag. Schwartz replied in the negative. In Marcantonatos's experience, the suspect usually asks for a description of the bag and hands it over if an accurate description is provided. This was the first time Marcantonatos encountered a denial. But a reasonable officer should consider that, with no "wife" in sight, Schwartz would have been reluctant to hand the bag to any man who demands it.

At that point, Schwartz started to walk a few steps; the other officers approached and Schwartz noticed that one was wearing a badge. Schwartz claimed to be taking the bag to the Dairy Visitor Center to turn it in, but the officers decided to arrest her. Schwartz spent four hours in custody at a nearby police station and had to defend a criminal charge for petit larceny until such time as she agreed to accept an adjournment in contemplation of dismissal.

In this § 1983 action against the City of New York and the individual officers, Schwartz claims they violated her

---

[1] Schwartz claims the unattended bag was filthy and that she put it in a bag to keep from having to hold it in her hands. The officers acknowledge the bag has been used in similar operations for some time and has, on occasion, been thrown in the trash. Nevertheless, probable cause is based only on the facts known to the officers in making their decision to arrest--any explanation Schwartz had for placing the bag in another bag is irrelevant to our analysis.

3

Fourth and Fourteenth Amendment rights. The district court denied the motion by the individual officers for summary judgment on the ground of qualified immunity, ruling that there were genuine issues of material fact regarding the exchange between Schwartz and Marcantonatos; this interlocutory appeal followed. We review a district court's summary judgment decision *de novo*, construing the evidence in the light most favorable to the non-moving party. See Vincent v. The Money Store, 736 F.3d 88, 96 (2d Cir. 2013).

"Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[A] police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (quotation marks omitted).

"There is no doubt that the right to be free from arrest without probable cause was clearly established at the time of [Schwartz's] arrest." Id. "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995) (quotation marks omitted). "While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (internal citations and quotation marks omitted). "[O]ur inquiry is an objective that focuses on the facts available to the arresting officer at the time of the arrest." See Finigan v. Marshall, 574 F.3d 57, 61-62 (2d Cir. 2009).

The issue is whether the probable cause determination was reasonable; accordingly "'arguable probable cause' will suffice to confer qualified immunity for [an] arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2007). This test is "more favorable to the officers than the one for probable cause," id.; however, "'[a]rguable' probable cause

4

should not be misunderstood to mean 'almost' probable cause," Jenkins, 478 F.3d at 87. "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera, 361 F.3d at 743.

The officers claim they had probable cause (actual or arguable) because Schwartz: 1) picked up the bag; 2) placed it inside another bag; 3) walked away; and 4) denied having the bag. However, other circumstances known to the officers prior to their decision to arrest Schwartz militate against granting them qualified immunity. Schwartz took nothing out of the bag (no "separation"), and never opened it or looked inside. The officers relied on Schwartz denying possession, and not asking Marcantonatos to describe the bag. However, that reaction to what could have been a scam does not bespeak theft. In the scenario, *created by the officers*, a woman in possession of an apparently lost handbag refuses to turn it over to a stranger illegally riding a bicycle, who claims it belongs to his wife, with no apparent spouse in view. By disclaiming possession of the bag, Schwartz reduced the risk that a real thief would snatch it, or would take it even if he could not describe it.

Schwartz told the arresting officers that she planned to take the bag to the visitor center. Common sense and police experience confirm that a thief will often tell police that they intended to turn the bag over to the authorities. However, the officers failed to consider the honest alternative. Cf. Provost v. City of Newburgh, 262 F.3d 146, 158 (2d cir. 2001) ("[A]n officer who concedes the possibility that there were justifiable reasons for disruptive conduct underlying a plaintiff's arrest is hard-pressed to establish that he had probable cause as a matter of law on the intent element of [the disorderly conduct statute].") Schwartz walked away from the bench in the direction of the Dairy Visitor Center, and was mere steps away from it.

Based only on the plaintiff's version of the facts, the officers had neither probable cause nor arguable probable cause. Therefore, we conclude that at this stage of the litigation they do not enjoy qualified immunity. In so concluding, we of course do not preclude the possibility

5

that factual findings made later in the litigation resolving the disputed material facts may justify qualified immunity.

For the foregoing reasons, and finding no merit in the officers' other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK